IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BARBARA BURKHART,                    *

    PLAINTIFF,                       *

vs.                                  *

                     *     CASE NO. 2:07 CV061-WHA

AETNA LIFE INSURANCE CO. and         *
LABORATORY CORPORATION               *
OF AMERICA,                          *

    DEFENDANTS.                      *

**MOTION FOR SUMMARY JUDGMENT**

Comes now the Plaintiff, Barbara Burkhart, and files this Motion for Summary Judgment against the Defendants, Aetna Life Insurance Company and Laboratory Corporation of America, showing unto the Court that there is no genuine issue of material act and that the Plaintiff is entitled to a judgment against the Defendants as a matter of law. In support of said Motion for Summary Judgment, the Plaintiff attaches the Affidavit of the Plaintiff , Barbara Burkhart, the Affidavit of Joseph E. Burkhart, and numerous documents produced by the Plaintiff and the Defendants in their Initial Disclosures.

Stephen M. NeSmith (NES003)
Attorney for Plaintiff, Barbara Burkhart

Of Counsel:

Riggs & NeSmith, P.A.
Post Office Box 1047
Montgomery, Alabama 36101-1047
Tel. (334) 834-6990
Fax (334) 834-4796

## Certificate of Service

I hereby certify that I have served a copy of the foregoing Motion for Summary Judgment upon the following persons, by placing a copy of same in the U.S. Mail, postage prepaid, on this 3rd day of April, 2008:

James W. Lampkin, II, Esquire
Alford, Clausen & McDonald, LLC
One St. Louis Center, Suite 5000
Mobile, Alabama 36602

Of Counsel

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BARBARA BURKHART                    *

    PLAINTIFF,                     *

                        *

v.                                  *     CASE NO. 2:07cv061-WHA

                        *

LABORATORY CORPORATION OF           *
AMERICA and AETNA LIFE              *
INSURANCE COMPANY,                  *

                        *

    DEFENDANTS.                    *

## PLAINTIFF'S BRIEF IN SUPPORT OF
## SUMMARY JUDGMENT

Comes now the Plaintiff, Barbara Burkhart, and files this brief in support of her Motion

for Summary Judgment, showing unto the Court as follows:

### Summary of Facts

The Plaintiff, Barbara Burkhart, worked as a compliance office and auditor for

Defendant, Laboratory Corporation of America (hereinafter referred to as LCA) and its

predecessor, Alabama Reference Lab, in Montgomery, Alabama. Her job required her to travel

to various locations to make presentations on behalf of her employer.

During her tenure for LCA, she was involved in two different automobile accidents,

requiring surgery on her neck, and subsequent knee replacement surgery on both on her knees.

She continued having lower back pain but did not have surgery thereon. The injuries from these

accidents, along with other medical problems, resulted in permanent physical and mental

disabilities. Her physicians prescribed medication for the pain, which provided some relief but

caused other side effects, such as dizzy spells, headaches, drowsiness, cognitive slowing,

insomnia. Between her physical pain and the side effects of her medicine, she was no longer

able to perform her duties at work, as well as at home. Her doctors advised her that she was no longer able to work, not just for LCA, but any type of employment. (See B. Burkhart deposition)

She stopped working in May, 2005, and applied for disability benefits pursuant to her employer's Short Term Disability and Long Term Disability Plan. After being initially denied, her application for short term disability benefits was approved by Defendant Aetna Life Insurance Company (the disability plan administrator, hereinafter referred to as Aetna) for 49 days on July 7, 2005, retroactive to June 6, 2005. On September 14, 2005, she received another letter from Aetna, stating she was approved through September 30, 2005. On October 4, 2005, Aetna advised her that she was no longer considered disabled and denied the remainder of her disability short term disability benefits. Pursuant to the Summary of Benefits Plan, short term disability benefits last for 26 weeks and then, if the employee still meets the plan definition of disability, the benefits continue thereafter. This denial also made her ineligible for long term disability benefits. Plaintiff appealed the denial of short term disability benefits, pursuant to the Plan

The Short Term Disability Plan of LCA defines total disability as any injury, illness or pregnancy which causes the employee to unable to perform one or more of the material duties of the employee's regular occupation, and the Company has no positions available that he is able to perform. (See J. Burkhart affidavit and Ex. No. 29) The definition for long term disability is similar (See J. Burkhart affidavit and Ex. No. 30) The Plaintiff's treating physicians, Dr. McKinney and Dr. Epperson, both wrote to Aetna and advised Aetna that based upon their medical opinions, the Plaintiff could not return to work and was totally disabled. (Ex. Nos. 21 through 28). The Plaintiff also submitted copies of her medical records to Aetna. At the request

of Aetna, both Dr. McKinney and Dr. Epperson filled out and submitted Attending Physician Statements to Aetna, in which they both stated that the Plaintiff was totally disabled.

On or about November 30, 2005, in response to the Plaintiff's appeal of the decision of Aetna to deny her disability benefits, Aetna wrote to the Plaintiff, stating that it had completed a review of its decision to terminate her short term disability benefits and that its denial was appropriate. (Ex. No. 19) In this letter, Aetna stated that it had reviewed Dr. Epperson's office notes of October 17, 2005, which mentioned that the Plaintiff was having difficulty walking but did not mention the need for any "assistive device to ambulate." Nor did the office note record a full musculoskeletal assessment. While Dr. Epperson put restrictions and limitations upon the Plaintiff's ability to walk, sit, stand and lift, and noted that Mrs. Burkhart emotional problems and medications were affecting her ability to function at work, Aetna brushed aside his medical opinion, despite having treated the Plaintiff for several years, stating there was no mention of any diagnostic testing in the record. And while the Aetna report details Mrs. Burkhart's lower spine problems, as disclosed from the MRI, which showed a bulging disc, hypertrophy of the lumbar spine producing spinal stenosis and bilateral forminal encroachment, Aetna ignored the significance of the lumbar problem.

Aetna also forwarded a copy of its Clinical Referral Review, dated November 29, 2005, upon which Andres Matos, the Aetna Benefit Specialist, determined that Aetna's denial of benefits was appropriate and wrote the November 30, 2005, letter to the Plaintiff. This Clinical Referral Review was performed by a registered nurse, who reviewed the file at a roundtable with Aetna's medical director.

Despite the continuing efforts of the Plaintiff's husband, Joseph Burkhart, who continued to submit additional medical records to Aetna and requested that Aetna reconsider its denial of

disability benefits, Aetna never changed its decision to deny benefits to the Plaintiff. The Plaintiff then filed suit against the Defendants on January 19, 2007.

## ARGUMENT

The Plaintiff filed suit against the Defendants, raising two (2) causes of action against the Defendants. First, the Plaintiff contends that the decision of the Defendants to deny her claim for disability benefits under her employers Pension Plan was arbitrary and capricious, was not made in good faith, was unsupported by the medical evidence and violated her rights under the Employee Retirement Income Security Act (ERISA), 29 USC Section 1132(a)(1)(B) and Section 1132(c). Secondly, the Plaintiff contends that the Defendants violated ERISA, Section 104(b)(4), by failing to provide the Plaintiff with a copy of the benefits Plan within 90 days of her requesting it, which violation justifies the Court to impose a penalty of $110 per day for each day per violation.

The Plaintiff has filed a Motion for Summary Judgment Under Rule 56( c)

of the Federal Rules of Civil Procedure, the Court is authorized to grant summary judgment if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. The party asking for summary judgment, in this case the Plaintiff, bears the burden of informing the court  of the basis of its motion and identifying those portions of the pleadings, evidence and affidavits which she believes demonstrates there is no dispute of a material fact. Shipp v. Provident Life & Accident Insurance Company, et al, 214 F.Supp.2d 1241 (M.D. Ala. 2002)

The denial of benefits under an ERISA plan that gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the plan will be

reviewed under an arbitrary and capricious standard. A decision by a plan administrator to deny benefits is arbitrary and capricious if no reasonable basis exists for the decision. Jones v. Firestone Tire & Rubber Co., 977 F.2d 527 (11th Cir. 1992)

The Plaintiff contends that the actions of the Defendants to deny benefits to the Plaintiff in reliance upon the opinion of a registered nurse over the opinion of two treating physicians, was arbitrary and capricious (See Ex. Nos. 20 & 32). Aetna decided to deny the Plaintiff short term disability benefits effective September 30, 2005, with about ten weeks of short term disability benefits remaining under the plan. At the time this decision was made, Aetna had in its possession medical records and letters from Dr. McKinney and Dr. Epperson, advising Aetna that the Plaintiff was disabled and that both physicians supported this decision. Thereafter, Aetna requested and received an Attending Physician Statement from both physicians, in which both physicians advised Aetna that Mrs. Burkhart was totally disabled.

While the Plaintiff appealed Aetna's decision to deny benefits, which she had a right to do under the plan, Aetna claims that it conducted an "independent review" of the decision to deny benefits and advised the Plaintiff that it stood by its earlier decision to deny benefits, basing its decision upon the opinion of a registered nurse. It is important to note that after the initial denial of short term disability benefits, Dr. Epperson wrote a detailed letter to Aetna, repeating three times in the letter that the Plaintiff was disabled, and set out his reasons for this opinion. Aetna chose to nit-pick Dr. Epperson's letter, stating that she failed to show why Mrs. Burkhart would have difficulty walking, sitting, lifting, etc. or why her medication which slowed her cognitive abilities would affect her in the work place.

The Plan reserved the right for Aetna to have Mrs. Burkhart examined physicians of its own choosing, but Aetna chose not to do so. (Ex. No. 31) Instead it relied upon a nurse's review

of medical records and a roundtable triage discussion with Aetna's medical director to support its denial of benefits. The explanations set forth in Aetna's denial letter of November 30, 2005, are unreasonable and cannot be rationally justified. As such, Aetna's denial of short term and long term disability benefits to Mrs. Burkhart was arbitrary and capricious.

The facts of this case are not in dispute. Mrs. Burkhart applied for disability benefits pursuant to her employer's plan. She was initially approved for benefits which were later denied. She appealed that denial. Aetna reviewed its denial, but used a nurse to do so, rather than a physician. Aetna relied upon the opinion of a nurse to support its decision to deny disability benefits to Mrs. Burkhart. Based upon the affidavits and the Plaintiff, Barbara Burkhart, and her husband, Joseph Burkhart, as well as the pleadings and exhibits attached to the affidavits, summary judgment in favor of the Plaintiff is appropriate. The Plaintiff respectfully requests this Court to grant summary judgment in her favor.

/s/ Stephen M. NeSmith
Stephen M. NeSmith (NES003)
Attorney for Plaintiff Burkhart

Of Counsel:

Riggs & NeSmith, P.A.
P. O. Box 1047
Montgomery, Alabama 36101-1047
Tel. (334) 834-6990
Fax (334) 834-4796
Email: riggsnesmithpa@yahoo.com

**Certificate of Service**

I hereby certify that I have served a copy of the foregoing Affidavit of Joseph Burkhart upon the following persons, by placing a copy of same in the U.S. Mail, postage prepaid, on this 3rd day of April, 2008:

James W. Lampkin, II, Esquire
Alford, Clausen & McDonald, LLC
One St. Louis Center, Suite 5000
Mobile, Alabama 36602

/s/ **Stephen M. NeSmith**
**Of Counsel**

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BARBARA BURKHART,

    Plaintiff,

v.

LABORATORY CORPORATION OF
AMERICA, et al.,

    Defendants.

**AFFIDAVIT OF PLAINTIFF**

STATE OF ALABAMA    )

MONTGOMERY COUNTY    )

    BEFORE ME, a Notary in and for said state at large, personally appeared BARBARA BURKHART, who being by me duly sworn, deposes and saith:

    " My name is BARBARA BURKHART and I am the Plaintiff in the above styled case. I am a resident citizen of the State of Alabama and have been for more than 10 years and I am over the age of 21 years.

    "I was a compliance officer and auditor for the Defendant and my duties included sitting for long periods of time typing at the computer and assembling reports, digesting documents and creating documents for review by our staff and management. My duties included being on the phone for long periods of time, speaking with employees, customers and managers to get information to compile for medicare compliance. I was required to travel to other locations and speak with them concerning medicare and to do presentations for my employer.

    "I became injured in two auto accidents and subsequently had some surgery on my neck and later both knees replaced. I suffer from lower back pain. The medications that I take made it very difficult for me to think clearly. The physicians called it "cognitive slowing", this was difficult for me to deal with and to be productive in my work. It took me very long periods of

time to complete tasks, I was easily distracted and I would forget where I had been in a report if I had to answer the phone or greet visitors to the office. I became very frustrated as I was always an excellent worker and very intelligent. This inability to focus and produce reports or sit or stand for long periods of time was difficult to the point of my not being able to be an excellent employee any longer . I could not concentrate on my work, I could not remember facts as before and I was in pain and discomfort every day to the point of being ineffective. I had dizzy spells, headaches, my nerves ached in my legs and my hands cramped after writing or typing for only a few minutes.

" I finally agreed with my physicians that I could no longer work with all of the side affects of the medications, which are headaches, dizziness, cognitive slowing, drowsiness, tiredness, irritability, nervousness, insomnia, and a great feeling of frustration. I forget things very quickly and this causes frustration. The injuries caused me too much pain, hand cramping and back pain and inability to think clearly. I feel I have developed light depression because of all of the above and the frustration of daily living even after not being able to work. I must have help in completing household chores and yard work. I need some help in getting dressed or brushing my hair. I realized that I could no longer work in this job or any job because of the combination of these ailments and shortcomings.

" I am currently taking the following medicines: neurontin, flexiril, celexa, mobic, aspirin, antivert, darvocet, antivan, zocor, zetia, zertek, indapamide, metroprolol, synthroid, folic acid, and cozaar.

" I have the following physicians: Larry Epperson-Neurologist, Rachel McKinney-Family Medicine, Robert Hoit-Kidney Specialist, Lynn Ammon Nurse Practioner-Family Medicine, Edward Parma-Retina Ophthalmology, Mikell Maddox-Family Medicine, Daniel Clark-Psychologist, John Hackman-Neurosurgeon, Steven Barrington-Orthopedic Surgeon and Physical Therapists.

Further, affiant saith not.

*Barbara Burkhart*
Barbara Burkhart

SWORN TO AND SUBSCRIBED before me on the 2 day of April, 2008.

NOTARY PUBLIC

My commission expires: 3/9/11

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BARBARA BURKHART                              *

    PLAINTIFF,                               *

                                             *

v.                                           *        CASE NO. 2:07cv061-WHA

                                             *

LABORATORY CORPORATION OF                    *
AMERICA and AETNA LIFE                        *
INSURANCE COMPANY,                           *

                                             *

    DEFENDANTS.                              *

                                             *

**Affidavit of Attorney Joseph E. Burkhart in Support of**
**Plaintiff's Motion for Summary Judgment**

STATE OF ALABAMA                  )
MONTGOMERY COUNTY                 )

    Before me, the Undersigned Notary Public in and for the State of Alabama at Large,
appeared Joseph Burkhart, who is known to me and who, being first duly sworn, deposes and
states on oath as follows:

    "My name is Joseph Burkhart and I am over the age of majority and am a bona fide
resident of Montgomery County, Alabama. I am an attorney at law, licensed to practice law in
the State of Alabama, and previously represented the Plaintiff, Barbara Burkhart. I am also the
husband of the Plaintiff, Barbara Burkhart.

    "Beginning in the Spring of 2005, I began writing to the Defendants, Laboratory
Corporation of America (hereinafter referred to as LCA) and Aetna Life Insurance Company
(hereinafter referred to as Aetna), trying to assist the Plaintiff in obtaining her short term
disability and long term disability insurance benefits which coverage she had based upon her
employment with LCA. The Plaintiff received her short term disability benefits from June 5,

2005 through September 30, 2005. During this time period, her benefits were stopped on a couple of occasions. Then, her short term benefits were stopped completely effective October 1, 2005. Between July 1, 2005, and December 1, 2005, I wrote several letters to both LCA and Aetna, requesting copies of the Summary Plan Description for both Short Term Disability and Long Term Disability, copies of the procedures by which Aetna determined eligibility for disability benefits, a copy of the appeals procedure, and the Certificate of Insurance. Copies of these letters are attached hereto as Ex. Nos. _____1_____ through _18_. Neither the Plaintiff nor I were ever provided with a copy of the Summary of Benefits Plan from either Defendant. These documents were only provided to the Plaintiff after she filed suit and received the Defendants' Initial Disclosures. By my calculations more than 700 request days lapsed from the Plaintiff's first request for these documents and the day they were finally provided.

"During this time, I did receive, or was advised by Aetna of the appeals process for its denial of the Plaintiff's short term disability benefits, and requested that Aetna review its denial of benefits. In response to the Plaintiff's request for an appeal of the denial of her short term disability benefits, I received a letter, dated November 30, 2005, from Andres Matos, a Senior Technical Specialist, Benefit Management Services, Aetna Life Insurance Company, in which Defendant Aetna claims to have performed and independent review and upheld its prior decision to terminate the Plaintiff's services. A copy of that letter is attached hereto as Ex. No. _19_. Attached as Ex. No. _20_ is a copy of the Clinical Referral Review, dated November 29, 2005, which I also received from Mr. Matos, upon which he based his November 30, 2005, letter.

"When the Plaintiff finally received the Summary of Benefits Plan and Certificate of Insurance, I reviewed the definition of both the short term and long term disability. On page 71 of the 135 page Short Term Disability policy, the term "disabled" is defined as follows:

" Through the STD Plan, you are considered disabled if you are:

- Unable to perform one or more of the material duties of your regular occupation, and LabCorp has no positions available that you are able to perform, and
- Under the regular care and supervision of a licensed physician or other health care provider approved by the Plan (a copy of attached as Ex. No. 3)

"The Long Term Disability Plan identifies the Test of Disability as follows:

"From the date you first become disable and until the Monthly Benefits are payable for 24 months, you will be deemed disabled on any day if:

- You are not able to perform the material duties of your own occupation solely because of: disease or injury; and
- Your work earnings are 80% or less of your adjusted pre-disability earnings.

After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed disabled on any day if you are not able to work at any reasonable occupation solely because of:

-- disease; or

-- injury.

"After obtaining and reviewing the short term and long term disability definitions in the Summary of Benefits Plan, I could not understand why the Plaintiff had been denied benefits. I know that her treating physicians had both written to Defendant Aetna, and also filled out "Attending Physician Statements" forms at the request of Aetna, and advised Aetna that the Plaintiff was totally disabled and was not expected to ever be able to return to work. Copies of these physician letters and Attending Physician Statements, which were produced by the Defendants in their Initial Disclosures, are attached hereto as Ex. Nos. _21_ through _28_.

"Both during and after the decision by Aetna to terminate the Plaintiff's short term disability benefits, I wrote to Aetna and provided Aetna with copies of all of the Plaintiff's medical records, and informed Aetna that the Plaintiff was agreeable with submitting herself to any physician that Aetna wanted to send her to for an independent medical examination. I know that Aetna reserves the right in the short term and long term disability policies, as set out in the

Summary of Benefits Plan, to have the insured examined by any physician chosen by Aetna. To date, Aetna has never accepted the Plaintiff's offer, nor has it ever requested that the Plaintiff submit herself to be examined by a physician selected by Aetna.

"According to the letter dated November 30, 2005, from Andres Matos, the basis of Aetna's denial of benefits to the Plaintiff are as follows:

(1) Although the medical records of Dr. Neil Stronach mentions intermittent vertigo, for which the Plaintiff was prescribed medication, the file did not contain further information regarding the vertigo nor her response to the treatment;

(2) Dr. Eppersons's notes mention mild weakness in both the upper and lower extremities with diminished reflexes as well as difficulty in walking, there is no mention in his notes about the need for a device to assist her in walking, nor was there a full musculoskeletal assessment. While Dr. Epperson (who has been treating Mrs. Burkhart for many years) recommended physical restrictions of no standing, walking or sitting for prolonged periods of time, and no lifting of over ten pounds, Aetna (which has never met nor examined the Plaintiff) felt there was no clinical rationale for the restrictions. Finally, while Dr. Epperson mentions that the medicine the Plaintiff takes for her pain was causing her emotional problems and cognitive impairment, the records did not mention any diagnostic testing such as a mini mental status examination.

(3) Based upon the clinical data presented for review, Aetna decided the Plaintiff did not have a marked and sustained functional limitations from September 30, 2005, forward.

"Based upon my review of the Defendant's Initial Disclosure documents, and my knowledge of how Mrs. Burkhart's injuries are affecting her daily lifestyle, how the medications she takes for her pain have slowed her cognitive abilities and her physical abilities to function around the house, and my review of all of the medical records which I obtained from the Plaintiff's treating physicians and forwarded to Aetna, it is my firm belief that there is no reasonable rationale for Aetna's denial of short term, nor subsequently long term disability benefits. I believe that Aetna refusal or failure to have Mrs. Burkhart examined by an independent medical examiner, in the face of two treating physicians' statements to Aetna that Mrs. Burkhart would never return to work, yet deny her benefits for the reasons stated in Mr. Matos' letter of November 30, 2005, is totally unreasonable. I believe that the actions of Aetna in this matter have been arbitrary and capricious."

"All of the documents attached to my Affidavit or the Motion for Summary have either come from the Plaintiff's files and are copies of documents provided to the Defendants through the Plaintiff's Initial Disclosures, or are copies of letters or documents which I personally provided to the Defendants throughout this matter, or are documents which the Defendants provided to the Plaintiff through their Initial Disclosures. These documents are true and correct copies of the original documents in this matter."



SWORN TO AND SUBSCRIBED before the undersigned Notary Public on this 2nd day of April, 2008.

Notary Public
My commission expires: 8/19/2008

Joseph E. Burkhart, Affiant

Of Counsel:

Riggs & NeSmith, P.A.
P.O. Box 1047
Montgomery, Alabama 36101-1047
Tel. (334) 834-6990
Fax (334) 834-4796
Email: riggsnesmithpa@yahoo.com

Stephen M. NeSmith (NES003)
Attorney for Plaintiff Burkhart

## Certificate of Service

I hereby certify that I have served a copy of the foregoing Affidavit of Joseph Burkhart upon the following persons, by placing a copy of same in the U.S. Mail, postage prepaid, on this 3rd day of April, 2008:

James W. Lampkin, II, Esquire
Alford, Clausen & McDonald, LLC
One St. Louis Center, Suite 5000
Mobile, Alabama 36602

Of Counsel

# Law Offices Of
## Joseph E. Burkhart, L.L.C

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

Ms. Lee Ann Wright
Aetna Disability Insurance

June 20, 2005

Re: Barbara A. Burkhart
Short Term Disability Request

Dear Ms. Wright:

I am Barbara Burkhart's attorney in this matter and I understand that Aetna has made a decision not to honor Barbara's request for Short Term Disability. I would like for you to Fax to me a copy of the contract or policy you are relying upon in making this decision.

My client states that you referred to a pre-existing clause in the Contract with LabCorp to provide this short term benefits. Could you share this with me please?

Also is this a "new" request for Disability defined by your policy or is a continuing disability as defined by the policy? What physician's records are now in your possession? Dr. Larry Epperson, Dr. Rachel McKinney??

Please contact me to discuss my inquiry, thanks.

Yours truly,

Joseph E. Burkhart, Esq.



**Law Offices Of**
**Joseph E. Burkhart, L.L.C**

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

July 01, 2005

Mr. Ony Quinones
Aetna Disability Supervisor

Re: Barbara A. Burkhart
    Short Term Disability Request

Dear Ony Quinones:

Thanks for calling me yesterday to tell me that Barbara's disability had been approved for STD. My client spoke with me this morning and stated that you called her at home to state this and to say that it was only approved for 17 more days and that at that time your Medical Review Board would look at her status. I believe that you also said something about having another physician examine her, is that true?

I am again **formally requesting:**

a.   a copy of your procedures for deciding a customer's is eligible for obtaining disability.

b.   I would also like a copy of the appeals procedure if Aetna does not approve a request.

c.   I would like a copy of the "Summary Plan Description" for the Short Term Disability Plan" and the "Long Term Disability Plan"

Thank you for your assistance in this matter. I understand that you will notify LabCorp of your decision so that Barbara can begin getting paid for her STD, as it has now been sine May 27, 2005 without any pay.

Yours truly,

Joseph E. Burkhart, Esq.

Px-2

Law Offices Of
**Joseph E. Burkhart, L.L.C**

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

Mrs. Debbie Goodale Sr. HR Consultant
4500 Conaern Drive
Louisville, KY 40213

September 07, 2005

Re: Summary Plan Description Request

Dear Mrs. Goodale:

I am an attorney representing your employee Barbara A. Burkhart and I am requesting on her behalf a copy of the Summary Plan Description for the Short Term Disability and Long Term Disability policies.

I did receive a copy of the "handbook" section that talks about STD & LTD, but there is a legal document entitled "Summary Plan Description". I need this document to proceed with an appeal for Barbara's disability benefits. Please forward these document for each disability type. Also I need a copy of the "policy" for Short Term Disability & Long Term Disability with Aetna that applies to Barbara's coverage.

Thank you for your help in this matter, I am told by Aetna that VJabCorp is the Plan Administrator for these programs.

Yours truly,
Joseph E. Burkhart, JD, SPHR

**Law Offices Of**
**Joseph E. Burkhart, L.L.C**

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

Mr. Ony Quinones
Aetna Disability Supervisor

September 02, 2005

Re: Barbara A. Burkhart
    Short Term Disability Request

Dear Ony Quinones:

Thanks for calling me yesterday to tell me that Barbara's disability. I am told that Dr. Epperson's office faxed the reports to you yesterday afternoon. Please forward information to restart Barbara's STD, thanks

Thank you for your assistance in this matter. I understand that you will notify LabCorp of your decision so that Barbara can begin getting paid for her STD, as it has now been since July 24, 2005 without any pay.

Yours truly,

Joseph E. Burkhart, Esq.

Law Offices Of
**Joseph E. Burkhart, L.L.C**

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

Mrs. Debbie Goodale Sr. HR Consultant
4500 Conaem Drive
Louisville, KY 40213

September 16, 2005

Re: Summary Plan Description Request

Dear Mrs. Goodale:

I am an attorney representing your employee Barbara A. Burkhart and I am requesting on her behalf a copy of the Summary Plan Description for the Short Term Disability and Long Term Disability policies.

Thank you for your help in this matter, I am told by Aetna that LabCorp is the Plan Administrator for these programs.

Yours truly,

Joseph E. Burkhart, JD, SPHR



**Law Offices Of
Joseph E. Burkhart, L.L.C**

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

Mrs. Debbie Goodale Sr. HR Consultant
4500 Conaem Drive
Louisville, KY 40213

October 11, 2005

Re: Summary Plan Description Request
Follow-up Request

Dear Mrs. Goodale:

I am an attorney representing your employee Barbara A. Burkhart and I am
requesting on her behalf a copy of the Summary Plan Description for the Short Term
Disability and Long Term Disability policies.

Barbara has now been denied her Short Term Disability and they tell me that
LabCorp is the Administrator of the program so please send me a copy of the Summary
Plan Description for the STD & LTD.

Thank you for your help in this matter

Yours truly,

Joseph E. Burkhart, JD, SPHR



Law Offices Of
Joseph E. Burkhart, L.L.C

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

October 13, 2005

Aetna Disability
Short Term Disability Claim
Lexington, KY 40512-4557

Re: Barbara A. Burkhart
    DOB: 02/021946
    LabCorp Employee

Dear Aetna STD Disability:

I am requesting a copy of the determination not to honor our request for STD benefits from Aetna. Please include the definition of disability, or similar limitation or exclusion, an explanation of the clinical judgment for the determination, applying terms of the plan to her medical condition. I understand this will be provided free of charge upon our request.

If a specific rule, guideline or protocol was relied upon in the adverse determination please provide a copy of same for my review and comprehension.

Yours truly,

Joseph E. Burkhart, Esq.

(Enclosed Employee ID on Separate Sheet)



Law Offices Of
Joseph E. Burkhart, L.L.C

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

October 11, 2005

Mr. Ony Quinones
Aetna Disability
Tampa, FL

Re: Barbara A. Burkhart
DOB: 02/021946
LabCorp Employee

Dear Mr. Quinones:

I am requesting a copy of the determination not to honor our request for STD benefits from Aetna. Please include the definition of disability, or similar limitation or exclusion, an explanation of the clinical judgment for the determination, applying terms of the plan to her medical condition. I understand this will be provided free of charge upon our request.

If a specific rule, guideline or protocol was relied upon in the adverse determination please provide a copy of same for my review and comprehension.

Yours truly,

Joseph E. Burkhart, Esq.



Law Offices Of
**Joseph E. Burkhart, L.L.C**

Suite 206
471 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

October 25, 2005

Aetna Life Insurance—STD
P. O. Box 14557
Lexington, KY 40512-4557

Re: Barbara A. Burkhart
    DOB: 02/021946
    SSAN: 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
    CSA/Plan: 8856363-0659/DC
    Laboratory Corporation of America Holdings

Dear Aetna:

I am Attorney Joseph E. Burkhart and I am representing Barbara Burkhart in an effort to get her Short Term Disability (STD) benefits.

I am now responding to your last letter denying the STD benefits from Aetna. Barbara has been evaluated by a Clinical Psychologist, and another general medical care provider and these reports are enclosed in this correspondence. Also the nurse evaluator for Aetna talked about needing side effects of medications Barbara is taking, please find those enclosed in this packet for your additional review.

I am requesting that you review and continue her STD benefits based upon this additional information.

Yours truly,

Joseph E. Burkhart, Esq.

BU000286



081730032800027

Law Offices Of
**Joseph E. Burkhart, L.L.C**

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax (334) 262-4808

October 25, 2005

Aetna Life Insurance —STD
P. O. Box 14557
Lexington, KY 40512-4557

Re: Barbara A. Burkhart
DOB: 02/02/1946
SSAN: 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
CSA/Plan: 8856303-069/DC
Laboratory Corporation of America Holdings

Dear Aetna:

I am Attorney Joseph E. Burkhart and I am representing Barbara Burkhart in an effort to get her Short Term Disability (STD) benefits.

We are asking for a review of your decision dated 10-01-2005 in which you denied benefits for STD benefits. I am enclosing the following reasons as to validate the need for STD benefits from Aetna.

1.  Barbara is unable to perform the material functions of her occupation solely because of on injury and illness. Please see Dr. Larry Epperson's medical records notes and Aetna Disability forms submitted and enclosed. These clearly indicate that Barbara can not perform her job duties because of her cognitive slowing due to medications she is taking. (see enclosed list of current medications taken). The high dosage of Neurontin she is taking for her condition is 1500mg per day. This drug causes dizziness, unsteadiness and inability to perform functions of her job.

2.  Barbara is also under the care of ENT specialist Dr. Stronach for inner ear problems and is taking medications to control her balance and walking.

3.  Her current treatment plan is to perform the MRI on her lower back and continue with medications. Her diagnosis is included in her Physician letter written to you form Dr. Larry Epperson.

4.  Dr. Larry Epperson is currently coordinating her care at this time.



5.  Please find enclosed historical medical data for your review.

6.  Dr. Epperson clearly indicates that Barbara can not return to work now nor does he think she will get any better, as she ages she will get worse.

7.  Dr. Epperson has reviewed the recent MRI and has order her to go to Physical Therapy for several weeks to see if this will help with her acute back pain.

8.  Barbara's history is included in the records submitted.

Barbara Burkhart can not perform her job duties nor will she ever be able to perform these duties as her Neurologist has indicated, she will only get worse and the medication she is taking are causing her to be less alert, slower thinking and reacting and she is having trouble balancing when she walks.    She currently suffers was dizziness, and increased back pain caused by lumbar disc problems. Her cervical spine problems cause her to lose her grip on items and cause her pain in her hands.

To summarize Barbara will need to collect Disability benefits as she is unable to perform her job duties.

Yours truly,

Joseph E. Burkhart, Esq.



**Aetna™**

PO Box 14557
Lexington, KY 40512-4557

**Andrés Matos**
Sr. Technical Specialist
Benefit Management Services
Phone 877-238-6202
Fax 866-275-2174

November 22, 2005

Barbara A Burkhart
4316 Liztame Dr.
Montgomery, AL 36106

Group Plan No:      885630
Employer:      Laboratory Corporation

Dear Ms. Burkhart:

You have previously received correspondence regarding your request for an appeal of our termination decision.

We find that additional time for the clinical review is needed.

As such, we are unable to make our decision within the initial **45 days**. Therefore, we are extending the appeal deadline by forty-five (45) days. You will receive a response dated prior to January 22, 2006.

If you have any questions, please call 1-877-238-6202.

Sincerely,

Andrés Matos
Aetna Life Insurance Company

PX-12

**Law Offices Of**
**Joseph E. Burkhart, L.L.C**

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

December 01, 2005

Re: Medical Insurance Change

Mrs. Debbie Goodale Sr. HR Consultant
4500 Conaem Drive
Louisville, KY 40213

Dear Mrs. Goodale:

As per your conversation with Barbara Burkhart this morning, she is requesting to cancel her medical insurance benefits on this date, thanks.

I am an attorney representing your employee Barbara A. Burkhart and I am requesting on her behalf a copy of the **Summary Plan Description** for the Short Term Disability and Long Term Disability policies.

I also need a copy of the Certificate of Insurance for the Short Term Disability & Long Term Disability policies. I need them to understand the benefits and appeal process, as stated in the Handbook on-line, an employee may request a copy, thanks.

Thank you for your help in this matter.

Yours truly,

Joseph E. Burkhart, JD, SPHR



# Law Offices Of
## Joseph E. Burkhart, L.L.C.

Suite 206
472 S. Lawrence Street
Montgomery, Alabama 36104

Fax:    (334) 262-4800
        (334) 262-4808

December 05, 2005

Mr. Andres Matos
Aetna Disability
P. O. Box 14557
Lexington, KY 40512-4557

Dear Mr. Andres Matos:

Re: Request of All Data Used To Decide Determination
    Barbara Burkhart 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

    I am requesting a copy of any resources that were used by Aetna to make the determination that Barbara Burkhart was not eligible for continued Short Term Disability. This could include any Clinical Reviewers names with opinions and any vocational reviewers names and opinions. Any other data to include documents generated by Aetna and it's employees or contractors, records, any relevant information used to make the determination, guidelines and protocols relied upon in the adverse determination.  Thank you for your prompt response to this request.

Yours truly,

Joseph E. Burkhart, Esq.



Law Offices Of
**Joseph E. Burkhart, L.L.C**

Suite 206
472 South Lawrence Street
Montgomery, Alabama 36104

(334) 262-4800
Fax: (334) 262-4808

December 15, 2005

Ms. Kathryn Kyle
LabCorp Legal Dept.
Burlington, NC

Re: Barbara Burkhart
    Employee-Disability Denial

Dear Ms. Kyle:

I am representing the above employee in a quest to obtain her Short Term
Disability (STD) & Long Term Disability (LTD) Benefits. Aetna has denied her STD
benefits and I must mount an appeal and I will need a copy of the "Summary Plan
Description" for both the STD and LTD plans.

I have been trying to secure these documents for some months and I have been
sent a copy of the "Handbook" as it relates to the above that appears on the Employee
web page. Are there other documents entitled "Summary Plan Description" for LabCorp
Employees? If so I need them ASAP.

I also need a copy of the "Certificate of Insurance" for the STD and LTD Plans.
Would you please forward of copy to me please?

I have asked for these several times and Debbie Goodale is our local HR contact
person who has never spoken to me about them so I must speak with you to get some
results.

Thanks for your help.

Yours truly,

Joseph E. Burkhart, Esq.





Liann Wright
Disability Analyst
Tampa Disability Service Center
Phone: 1-800-488-2386
Fax: 1-877-444-9788

P.O. Box 14557
Lexington, Ky 40512-4557

December 28, 2005

Law Offices of
Joseph E Burkhart, L.L.C
472 South Lawrence Street
Montgomery, Alabama 36104

Re: Information Requested

Dear Mr. Joseph Burkhart:

Per you request, enclosed is a copy of the documentation used in our evaluation
of Barbara Burkhart's claim for Short Term Disability benefits.

If you have any question or need further information please contact customer
service at 800-488-2386.

Sincerely

Liann Wright



# Law Offices Of
## Joseph E. Burkhart, L.L.C.

Suite 206
472 S. Lawrence Street
Montgomery, Alabama 36104

Fax:    (334) 262-4800
        (334) 262-4808

**Mr. Andres Matos**
Aetna Disability-Appeals Unit

January 10, 2006

Re: Barbara Burkhart
    LabCorp of America
    Group Control: 885630

Dear Mr. Matos:

    I have received some of the materials I requested from you to review in order to update the appeal for Short Term Disability for Barbara Burkhart. I would like to get a copy of each reviewers comments and opinions and their names and positions either with Aetna or outside consultant.

    I am also getting more evaluations my her physicians and I will forward them to you for your additional review and evaluation. I need the above in order to address each comment that would deny her request for benefits, thanks.

Yours truly,

Joseph E. Burkhart, Esq.



**Law Offices Of**
Joseph E. Burkhart, L.L.C.

Suite 206
472 S. Lawrence Street
Montgomery, Alabama 36104

Phone: (334) 262-4800
Fax:   (334) 262-4808

June 19, 2006

Mr. Ory Quiniones
Aetna Disability
P. O. Box 14557
Lexington, KY 40512-4557

Re: Barbara Burkhart
    LabCorp of America
    DOB: 02/02/1946
    CSA/Plan 88563033-069/DC

Dear Mr. Quiniones:

I have sent 64 additional pages of medical data for consideration of continuation of my clients STD benefits, your office states that got them of April 26, 2006. Please advise me of the determination made by you concerning reinstating her Short Term Benefits.

I am requesting that your review and continue her STD benefits based upon the total of all the medical information in her file and your medical review of this file. I look to hear from you AS.AP as you have had the additional materials since 04/24/2006.

Yours truly,

Joseph E. Burkhart, Esq.



Aetna™

PO Box 1457
Lexington, KY 40512-4457

Andrés Matos
Sr. Technical Specialist
Benefit Management Services
Aetna Life Insurance Co.
Phone # 1-877-238-6202
Fax #  1-866-275-2174

November 30, 2005

Law Offices of
Joseph E. Burkhart, L.L.C
472 South Lawrence Street
Montgomery, Alabama 36104

Appeal:          Short Term Disability Plan
RE:              Barbara A Burkhart
Employer:        Laboratory Corporation of America Holdings
Group Control:   885630

Dear Mr. Burkhart:

We have completed the independent review of our decision to terminate Ms. Burkhart's Short Term Disability Plan, (STD) for the period of September 30, 2005, forward and determined the administration of Ms. Burkhar's STD claim was appropriate.

The Laboratory Corporation of America Holding's STD plan states the following:

"Total Disability shall mean any injury, illness or pregnancy which causes the Claimant (1) to be unable to perform one or more of the material duties of your regular occupation, and the Company has no positions available that you are able to perform."

A review of the contents in the file revealed Ms. Burkhart's last day worked was June 05, 2005, and the date of disability commenced was June 06, 2005. STD benefits were paid through September 30, 2005, and benefits beyond this date were terminated. In order to receive ongoing STD your client must meet the definition of disability through out the entire absence.

To assist with the assessment of the material evidence, a Health Care Professional reviewed the file. According to the Clinician's review, the medical records mentioned Ms. Burkhart sustained injuries from a motor vehicle accident in 1999, which resulted in cervical fusion-other conditions noted were spinal stenosis and lumbar disc disease. Following the second motor vehicle accident in 2000, your client was diagnosed with diabetes, hyperthyroidism, hyperlipidema, hypertension and intermittent vertigo. However, the file lacked blood sugar levels, or endocrinologist clinical data which demonstrated the impact of diabetes on Ms. Burkhart's ability to function. Both the hyperthyroidism and the hypertension were controlled with medications. With regards to the intermittent vertigo, Ms. Burkhart was seen by an Ear, Nose, and Throat health care provider where she was prescribed medications to combat the symptoms. Of note, the file did not contain further information regarding the vertigo and the response to the treatment.

Px-19

Page 2

Dr. Larry Epperson's office note dated October 17, 2005 mentioned mild weakness in the upper and lower extremities with diminished reflexes as well as observed difficulty walking. Nonetheless, there was no mention in the record of assistive device to ambulate nor was there a full musculoskeletal assessment recorded on the office note. Dr. Epperson recommended the following restrictions on your client: no standing, walking or sitting for prolonged period of time, and no lifting over five to ten pounds-with no clinical rationale supporting the restrictions and limitations. Additionally, referenced in this office record was the state of Ms.Burkhart's emotional as well as her cognitive impairment (related to the medication dosages) and its impact on occupational functioning. Correlating behavioral health medical records or diagnostic testing results such as a mini mental status examination that addressed cognitive or emotional functional impairment were not presented.

Also, included in the medical records was a lumbar MRI performed on October 21, 2005. The impression of the MRI documented a posterior bulge of the disc, and hypertrophy at the lumbar spine which produced spinal stenosis and bilateral foraminal encroachment. There was also a focal midline posterior protrusion of disc material and facet hypertrophy at the lumbosacaral spine without spinal stenosis or foraminal encroachment. Nerve Conduction Velocity and Electromyographic diagnostic testing results were normal for the left upper extremity.

Consequently, we have determined the clinical data presented for review did not support a marked and sustained functional limitations from September 30, 2005, forward. As such, the decision to terminate STD benefits has been upheld.

You are entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records and other information relevant to the claim, as well as any specific rule, guideline or protocol relied on in the adverse determination. You have the right to bring an action under Section 502(a) of ERISA.

If you have questions, please call us at 1-877-238-6202.

Sincerely,

Andres Matos
Aetna Life Insurance Company

# ✕Aetna™

## CLINICAL REFERRAL/REVIEW

**Claimant Name:** Barbara Burkhart

| | | |
|---|---|---|
| **Soc SecID:** 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 | | **Date of Birth:** 02/02/1946 |

**Date Claim Incurred (DCI):** 06/06/05    **Control:** 885530    **Claim Office:** Florida

**Policy Holder:** Lab Corporation

**Date Last Worked:** 06/05/05    **ERISA Day 45=** 12/09/05    **ERISA Day 90=** 1/23/06

**Cert/Pay through date:** 9/30/05    **End of Benefit:**  •    12/11/05

**DOT/Job Description:** Compliance Auditor

**Job Description in file:** No    **Occupation Classification:** Sedentary

**Type of Claim:** STD    **Diagnosis:** nonunion @ C6-C7 s/p fusion @ C5, 6, and 7,(1999); spinal stenosis at C4-5 nd C5-6 secondary to posterior bulge disc facet and bilateral ligamentous hypertrophy at L4-5 producing spinal stenosis and bilateral foraminal encroachment, Vertigo

**Disability Test:** Own Occupation

**Prior Reviewer:** NCM  Susan Duffy, R.N.    **System:** TUMS/SIR Please review all the medical records associated with the DCI in Sir.

**BRIEF SYNOPSIS OF CLAIM:** This 59 y/o Auditor was/is involved with two MVA, (s) where she sustained injuries to her back. The first MVA was May 17, 1999. The immediate complaints consisted of right occipital head aches and left leg numbness. Despite ongoing treatment, the claimant underwent a cervical spine fusion on October 19, 1999. The records showed several attempts to return to work were made however, was unsuccessful due to the one going complaints of pain. The second MVA was noted as November 8, 2000. The sustained injuries were to the lumbar spine and included, disc protrusion L4-L5 T L5-S1, small focal disc herniation @ L5-S4 with annular tear.

The June 06, 2005 absence was certified through September 30, 2005 and benefits beyond that date were terminated. RX includes; neurontin, altace, noravasc, maxide, toporol, synthroid, flexeril, zocor, allegro nasal spray, mobic, flexril, anilvert, and zefta.

Date of service of June 9, 2005 (FP) documented the following restrictions and limitations: no prolonged sitting, looking around, writing or, typing. The Attending Physician Statement dated August 18, 2005, documented restrictions consistent with those of June 9, 2005. Based on the clinical notations, the claimant has reached "maximal medical improvement and the only treatment remedies available include medication management, and subsequent nerve blocks which can produce cognitive slowing."

**REFERRAL QUESTION:** Does the medical evidence support a physical impairment of function from sedentary type work for the period of September 30, 2005 forward? If yes, please explain to what extent? If no, what documentation was missing from the file that would support a physical functional impairment?

Are there any known side effects to the medication listed in the file? If yes, did the clinical notations establish the claimant was suffering from such effects? If yes, please reference the specific clinical notations that establish the the claimant's inability to function as a result of medication side effects.

Px-20

Referring Analyst/Nurse: Select one

Referral Date:

**RECORDS REVIEWED:**

Barbara Burhart, SS# 326422695

5/17/99- MVA- neck pain, occipital ha and L leg numbness.

6/16/99- seen by neurologist-

10/1999- cervical fusion

11/8/2000- MVA- LBP, MRI reveal disc protrusion at L4-5 and L5-S1.

1/14/01- seen by neurologist – therapy started.

3/6/01- seen again by neuro- LBP, R leg pain, some L leg pain- PT, ESI option reviewed.

11/1/01- cont with LBP.

11/1/01- MRI showed small focal disc herniation at L5-S1 with annular tear.

1/14/02- Cat scan – reveal non union at C6-C7 with mild ventral ad R sided encroachment at C5-C6 secondary to hypertrophic bone along neural foraminal narrowing at C5-C6 and C6-7 and slight bulge at C4-C5. Lumbar myelogram was neg.

2/28/03 seen by neuro

2/28/03- NCV: left median and ulnar nerves - nl

2/28/03 EMG– Normal of the L C5-C6 paraspinal muscles and all muscle of the LUE.

3/14/03- Cervical MRI: C5-C6 solid interbody fusion, C4-C5 post and midline disc herniation which touches the spinal cord, and spinal canal stenosis at C4-C5 and C5-C6, mild neural foraminal narrowing at C5-C6 and C6-C7, mild spine.

3/14/03 – Lumbar MRI – L3 – L4 to the L neural foramen, new when compared with the MRI on 11/16/01, L4-L5 mild disc protrusion to the far left, similar to slightly increased from the previous study, also borderline spinal canal stenosis stable, L5-S1 minimal disc protrusion post in the midline and tear of the annulus to the Left without significant change from the 11/16/01

3/27/03, cont with neurontin, NSAIDs, subsequent blocks, all he has to offer. Has reached MMI

10/25/05- Attorney's letter

Dr Barrington

3/28/05- APS- Hx of L DJD, surgery date: 12/16/04, lytox prn.

3/31/05 – Dx DJD- S/P RTKR on 3/16/05. Tx pain meds, PT, projected RTW – undetermined. First office visit 11/13/02.

**Jackson Family Practice**

**Dr Rachel McKinney**

2/23/05- Letter- The provider reports that the claimant has been under her care x 3/2003. Has tx of anterior fusion of C5-6 and C6-7 in 1999 with non union of C6-7, has been gainfully employed, seen on 5/26/05 for dizziness and spasms of her R hand. Out of work until future work up is completed.

6/14/05- Cervical MRI: Solid interbody fusion at C5-6, some residual Degenerative abnormalities at that level and also is evident at other levels in the cervical spine.

6/14/05- MRI of head- WNL.

8/18/05- APS- Dx dizziness, daily ha, weakness RT leg, spasm rt hard, first visit 5/26/05, every other week May through July and then prn. Tx: Ultram, Tylenol, ref to neuro. Limitations: no lifting over 10 lbs, no looking up or down, no prolonged sitting. Class 5, prognosis- fair, unable to work any job.

**Dr Neal Stronach, ENT**

8/1/05- intermittent positional vertigo with HA, x 8 weeks, MRI, neuro eval neg. Antivert helped initially. Exam unremarkable, Audiogram showed minimal high frequency neurisensory loss, trial of Naspocort and Allegra, follow up in 2 weeks.

**Neurology Consultants of Montgomery**

**Dr Larry Epperson,**

6/1/05- letter: Mrs. Burkhart has numerous medical problems and physical problems, has Hx of lumbar disc disease and cervical fusion with spinal stenosis at that level and also disc herniation at C4-C5, MVA on 11/8/2000 with back and neck problems since, recently dx with DM, and hyperthyroidism and has hyperlipidemia and HTN, near syncope episode lately, has applied for disability which he supports.

8/25/05- Follow up visit- for ha, dropping things, neck pain, cervical and lumbar disc disease. Also intermittent vertigo.° Neurontin has helped her ha and pain. Meds: neurontin, altace, norvasc, cardizelt, maxide, lopril, synthroid, prevacid, allegra, nasocort, zeta, allegro, zocor, flexeril, mobile and tramadol prn. BP 140/60. P 72. Impression: cervical and lumbar

( to be completed by Medical Reviewer)

0917200032071719

disease, ha, dizziness, hnormal brain MRI, chronic pain, Hx of C5-C6 fusion, spinal canal stenosis at C4-5 and C5-C6, disc herniation at L4-L5 with disc protrusion and L5-S1 disc protrusion. Follow up in 6 months.
9/22/05- APS- Class 4, prog – fair, no RTW expected. Remarks: C-spine stenosis C4-5 and C5-6, L5 HNP, L5-S1 and L%-S1.
10/17/05- Seen intermittent vertigo, fell in her pool, has diff in walking unassisted in the office. Has been treated with several blocks for intermittent neck pain, neurontin most of the time for neuropathic pain in neck and back. On exam reveals mild weakness in the UE and LE, reflexes diminished, has had bil knee replacements, Mrs. Burkhart is totally disabled, plan to repeat MRI of the L spine and continue medication which has caused some cognitive slowing. Her current Dx: s/p AC-fusion with a questionable nonunion and lumbar disc herniation at L3-L4 with disc disease also at L4-L5 and L5-S1, Tx of ESI, therapy or surgery pending MRI results, also she currently has an attack of vertigo, treated with antivert, follow up with ENT specialist. She is not released to RTW, she is not able to stand, walk or sit for prolonged periods of time, ill over 5-10 lbs, and emotional she cannot return to the work place.
10/21/05- Lumbar MRI- Impression: posterior bulge of the disc, bil facet and bil ligamentous hypertrophy at L4-5 producing spinal stenosis and bilateral foraminal encroachment. Focal midline posterior protrusion of disc material and facet hypertrophy L5-S1 but without spinal stenosis or foraminal encroachment.
11/29/05- Claim reviewed with Dr. Anfield medical director at triage roundtable.

## CASE SUMMARY:

59 y/o female, on claim x 6/8/05 from her sedentary occupation as a compliance auditor with long standing Hx chronic pain, has been in long term use of Neurontin, analgesic, flexeril and Nsaids Tx. Has Hx of MVA in 1999 resulting in cervical fusion with spinal stenosis, lumbar disc disease, MVA in 2000, and recently dx with DM, hypertyroidism and has hyperlipidemia, HTN, intermittent vertigo. Treated with surgery, PT, pain medication. Cervical MRI on 6/14/05 showed solid interbody fusion at C5-6, some residual degenerative disease at multiple levels. Lumbar MRI on 10/21/05 posterior bulge of the disc, hypertrophy at L4-5 producing spinal stenosis and bilateral foraminal encroachment. Focal midline posterior protrusion of disc material and facet hypertrophy L5-S1 but without spinal stenosis or foraminal encroachment. Her current medications include: Neurontin, Abaca, Norvasc, Cardizatek, maxide, Toprol, Synthroid, Prevacid, Allegra, Nascocort, Zetia, Zocor, Flexeril, Mobic and Tramadol prn. This file contains notes from Dr McKinney FP, on 8/18/05 places the claimant on Limitations: no lifting over 10 lbs, no looking up or down, no prolonged sitting. Class 5, Prognosis- fair, unable to work any job. There is no mention of a musculoskeletal assessment for review. The file contains notes from Dr Epperson neurologist on 10/17/05 he reports his findings mild weakness in the upper and lower extremities, reflexes are diminished, claimant has diff in walking unassisted in the office, there is no mention claimant needs assistive device to ambulate, affect is normal, there is no mention of a full neuropsychological assessment to support impairment to function. There is no mention of a ref for additional diagnostic testing. He provider reports that she claimant is not able to stand, walk or sit for prolonged period of time, lift over 5-10 lbs, and emotionally she cannot return to the work place, there is no mention or ref to a behavior/health specialist. The file list the dx of intermittent positional vertigo, claimant seen by Dr Stomach, ENT specialist on 9/1/05. Antivert prescribed with benefit and trial of Nascocort and Allegra, with follow up in 2 weeks, there is no mention of notes from this specialist since. The file list the dx of HTN, there is no mention of blood sugar levels, Tx or ref to endocrinologist. The file list the dx of hyperthyroidism, controlled with medication, the dx of HTN controlled with medication. Based on the medical information presented for review, the documentation does not substantiate a physical functional capacity impairment that would prevent the claimant from performing full time sedentary work activity level from 10/17/05 forward with the ability to change positions as needed.

## RECOMMENDATIONS:
File returned to DA
Marta I Angelillo, RN, Nurse Consultant.
11/29/05

Reviewer (Name, Certification, State, License):
Signature:
Date Completed:

Confidential: This report is confidential and should be read only by designated Aetna Disability Services staff or specific designees in accordance with the Aetna Code of Conduct and applicable law.



# Neurology Consultants of Montgomery, P.C.

1722 Pine Street / Suite 700
Montgomery, Alabama 36106-1149
(334) 834-1900 • Fax (334) 834-8347

**P. Camilli Miller, M.D.**
Diplomate American
Board of Psychiatry
& Neurology

**Dan C. Weston, M.D., Ph.D.**
Diplomate American
Board of Psychiatry
& Neurology

**Gary R. Sheahy, M.D.**
Diplomate American Board
of Internal Medicine

**Larry W. Epperson, M.D.**
Diplomate American
Board of Psychiatry
& Neurology

June 1, 2005

Disability Determination Service
P.O. Box 830300
Birmingham, AL 35283-0300

Re:   Barbara Burkhart
DOB:  02-02-1946

To Whom It May Concern:

I write in reference to Mrs. Barbara Burkhart who has numerous medical problems and physical
problems. She has a history of lumbar disc disease and cervical fusion at C5-C6 with spinal
stenosis at that level, and also disc herniation at C4-C5. She was involved in a MVA 11-08-2000,
and has had back and neck problems since that time. She recently was diagnosed with diabetes
and hyperthyroidism and has hyperlipidemia and hypertension. She has had near syncope
episode recently. She is going to apply for Disability and I totally support her. She has tried to
work up this point and can no longer function in the work force.

This letter simply states that Mrs. Barbara Burkhart is disabled and is appropriately applying for
Disability.

If I can be of any further assistance, please do not hesitate to contact me. Best regards.

Sincerely,

Larry W. Epperson, M.D.

LWE/rl



TOTAL P.02

BU000239



# Neurology Consultants of Montgomery, P.C.

1722 Pine Street / Suite 700
Montgomery, Alabama 36106-1149
(334) 834-1300 • Fax (334) 834-8347

**P. Caudill Miller, M.D.**
Diplomate American
Board of Psychiatry
& Neurology

**Ben C. Wouters, M.D., Ph.D.**
Diplomate American
Board of Psychiatry
& Neurology

**Sara S. Shazly, M.D.**
Diplomate American Board
of Internal Medicine

**Larry W. Epperson, M.D.**
Diplomate American
Board of Psychiatry
& Neurology

DATE: _6-1-05_

RE: _Barbara Burkhead_   DOB: _2-2-56_

### TO WHOM IT MAY CONCERN:

This is to inform you that _Barbara_ is a patient of mine,
and ☐ IS / ☒ IS NOT being released to return to work.

☐ MAY RETURN TO FULL DUTY

☐ MAY RETURN TO LIGHT DUTY

### RESTRICTIONS THAT APPLY:

☐ NO BENDING

☐ NO SITTING, STANDING FOR MORE THAN TWO HOURS AT A TIME

☐ NO LIFTING GREATER THAN _____ LBS.

☐ NO STOOPING

☐ NO MOPPING

☐ NO DRIVING

☐ OTHER _Rework this week_

This patient ☒ WAS / ☐ WAS NOT seen in the office today for medical evaluation
and/or test.

Sincerely,

_Caudill Miller, MD_
☐ Caudill Miller, M.D.

_BCW_
☐ Ben C. Wouters, M.D.

_Larry W. Epperson, MD_
☒ Larry W. Epperson, M.D

BU000367

PX.22

0029060001

(Page 5 of 5)

DOB: 02-02-1946

08-25-2005                                              BARBARA BURKHART

The patient returns for followup for headaches, dropping things, neck pain, cervical and lumbar disc disease. She is disabled and has applied for Disability. She also has intermittent vertigo and was given Antivert, which helped her headaches for 2 weeks and then resolved. She saw Dr. Stronach who placed her on Allegra and Nasacort. He recommended she stay on that until November. She states Antivert did help significantly earlier. Neurontin has helped her headaches, as well, and chronic pain, as well. She does have a history of lumbar disc disease and was involved in a MVA on 11-08-2000. Since that time, she has had neck pain and low back pain.

PHYSICAL EXAMINATION: B/P: 140/60  PULSE: 72

IMPRESSION:
1.  Cervical and lumbar disc disease.
2.  Headaches.
3.  Dizziness.
4.  MRI of the brain 08-24-2005, normal.
5.  Chronic pain.
6.  History of C5-C6 interbody fusion.
7.  Spinal canal stenosis at C4-C5 and C5-C6.
8.  Disc herniation at L4-L5 with disc protrusion and L5-S1 disc protrusion.

PLAN:
1.  Followup in 6 months.
2.  Increase Neurontin to 600/300/600.
3.  Consider Antivert if Allegra and Nasacort have not helped.

MEDICATIONS: Neurontin, Altace, Norvasc, Cardizem, Maxzide, Toprol, Synthroid, Prevacid, Allegra, Nasacort, Zetia, Allegra, Zocor, Flexeril, Mobic, and Tramadol prn.

Larry W. Epperson, M.D.

LWE/rl

cc:   N. Stronach, M.D.
      R. McKinney, M.D.

P. Caudle Miller, M.D.   Ben C. Wouten, M.D., Ph.D   Larry W. Epperson, M.D.
1722 Pine Street Suite 700  Montgomery Alabama  36106
Phone: (334) 334.1300  Fax (334) 334-1347



PX 23

BU000228

(Page 1 of 5)



# Aetna

## Disability Attending Physician's Statement

Complete this form in full.

- The patient is responsible for completion of this form without expense to the company.
- You may use the Remarks section on the reverse side if you need more room to respond.

- Please fax your completed form to our Lexington, KY office at (877) 444-4788.
  (NOTE: The top portion of Page 2 MUST be completed before faxing.)
- If you have any questions, please call our Lexington, KY office at (800) 416-2386.

**Employee Information**

| Name | Lebcorp |
|---|---|
| Type of Plan | ☐ Disability  ☐ Life Waiver of Premium  ☐ PTD |

**Patient Information**

| Name | Barbara Bukbheet |
| Address | 4916 Laztame Drive Montgomery Al 36101 |
| Social Security # | 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 |
| Benefit Review | |
| Estimated Return | 2-2-04 |

**I. History**

(a) Height ___ Weight ___

(b) Date symptoms first appeared or accident happened ...... Mo. 8  Day 25  Yr. 05

(c) Date patient ceased work because of illness or injury ...... Mo. 8  Day 16  Yr. 04

(d) Has patient ever had same or similar condition? ☐ Yes ☐ No If yes, state when and describe.

(e) Is condition due to injury or sickness arising out of patient's employment? ☐ Yes ☐ No

(f) Names and addresses of other treating physicians:

| Name | |
| Address | |
| Name | |
| Address | |

**II. Diagnosis**

(a) Date of last examination .......... Mo. 8  Day 25  Yr. 05

(b) ICD diagnostic code (mandatory) 724.10  784.0  780.4

(c) Diagnosis (including any complications) See last office note

(d) Subjective symptoms See last office note

(e) Objective findings (including current X-rays, EKGs, laboratory data and any clinical findings): See last office note

(1) Clinical Findings

(2) Diagnostic Studies and Results

(f) If disability is due to pregnancy, the expected delivery date is ...... Mo. ___ Day ___ Yr. ___
(g) Other disease or infirmity affecting present condition

**III. Nature of Treatment**

(a) Date of first visit: .......... Mo. ___ Day ___ Yr. ___
(b) Date of last visit: .......... Mo. ___ Day ___ Yr. ___
(c) Frequency ... ☐ Weekly ☐ Monthly ☐ Other (specify)
(d) Is patient still under your care for this condition? ☐ Yes ☐ No, indicate date service terminated

**IV. Progress**

(a) Patient has ☐ Recovered ☐ Improved ☐ Stabilized ☐ Recurred
(b) Patient is ☐ Ambulatory ☐ House confined ☐ Bed confined ☐ Hospital confined
(c) Surgical procedures and dates: ___

Confined from ___ through ___

**V. Dates of Treatment**

(a) Typical dates of treatment: See last office note
(b) Prescribed medication:
(c) Surgical procedures and dates:



PL24

BU000225

(Page 4 of 5)

LabCorp

Page 2

Printed Name (REQUIRED): Barbara Buckhalt
Patient Social Security Number (REQUIRED): 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

**Examination**

**8. Cardiac (if applicable)**

(a) What are patient's present capabilities?
- Class 1 (none)
- Class 2 (slight)
- Class 3 (marked)
- Class 4 (complete)

(b) Blood Pressure (last visit):   Systolic ____ / Diastolic ____

**Limitations**

(a) What are patient's present capabilities?

(b) What are present limitations (physical and/or mental)?

(c) What restrictions are placed on patient?

**Class** (As defined in Federal Dictionary of Occupational Titles):
- Class 1 – No limitation of functional capacity; capable of heavy work • No restrictions (0-10%)
- Class 2 – Medium manual activity (15-30%)
- Class 3 – Slight limitation of functional capacity; capable of light work (35-55%)
- Class 4 – Moderate limitation of functional capacity; capable of clerical/administrative (sedentary *) activity (60-70%)
- Class 5 – Severe limitation of functional capacity; incapable of minimal (sedentary *) activity (75-100%)
Remarks:

**Mental/Nervous Impairment (if applicable)**

Please advise the "stress" as it applies to this claimant.

Do you believe the patient is competent to endorse checks and direct the use of proceeds thereof?   ☐ No   ☐ Yes

(4) What is the patient's prognosis?   ☐ Guarded   ☑ Good   ☐ Fair   ☐ Poor   ☐ Other

(5) When do you feel patient's maximum medical improvement will be reached?
☐ 1 Mo.   ☐ 1-3 Mos.   ☐ 3-6 Mos.   ☐ 1 yr or larger

(c) What is the estimated date of the patient's return to work?
☐ own job/occupation   ☐ other occupation

(d) Do you consider the patient to be a viable candidate for Vocational Rehabilitation (job retraining)?
☐ Yes   ☐ No, please explain:   ☑ no formal experience

**Remarks:** 2 spine cherss curry CFS

**Attending Physician's Name (print):** Larry Epperson m.b

**Address:** 342 Pike cnoeds chuk Jomongmberd 834/23 4/18-03
Dr. Pike cnoeds chuk Jomongmberd

**Signature:** L-S thref cHrC LS

**Specialty:** Neurology

**Degree:** m.b

Dr. Pike cnoeds chuk ...

7/2...

BU000226

[Page 1 of 2]



# Neurology Consultants of Montgomery, P.C.

1722 Pine Street / Suite 700
Montgomery, Alabama 36106-1149
(334) 834-1300 • Fax (334) 834-8347

P. Caudill Miller, M.D.
*Diplomate American*
*Board of Psychiatry*
*& Neurology*

Ben C. Wooten, M.D., Ph.D.
*Diplomate American*
*Board of Psychiatry*
*& Neurology*

Sam E. Shashy, M.D.
*Diplomate American Board*
*of Internal Medicine*

Larry W. Epperson, M.D.
*Diplomate American*
*Board of Psychiatry*
*& Neurology*

October 17, 2005

Aetna Life Insurance Company
PO Box 14553
Lexington, KY 40512-4553

Re:    Barbara Burkhart
DOB:   02-02-1946

Dear Aetna:

I write in reference to Mrs. Barbara Burkhart who was seen by me today. She recently fell in her own swimming pool with a severe attack of vertigo. She has had this for the past 2 weeks. She has had intermittent vertigo in the past and has seen Dr. Stronach, an ENT physician at Jackson Hospital. She had difficulty walking unassisted in our office.

She has a history of AC fusion by Dr. Hackman in the past. She has had intermittent neck pain in the past and been given several blocks in the past. These include occipital nerve blocks by me. CAT scan performed several years ago revealed a nonunion at C6-C7 with encroachment at C5-C6. MRI scan LS spine 11-16-2001, revealed a small central disc herniation at L5-S1. Prior to that, she was involved in a MVA 11-08-2000, where she had severe neck pain and bilateral arm pain. She has been on Neurontin most of the time for neuropathic pain concerning her neck and low back. MRI scan was obtained again in the lumbar and cervical spine on 03-14-2003. This revealed solid interbody fusion at C5-C6 with spinal stenosis at C4-C5 and C5-C6. MRI of the LS spine revealed new disc herniation at L3-L4 with neural foraminal encroachment and disc protrusion at L4-L5 with minimal disc protrusion at L5-S1 in the midline and tear of the annulus seen on the left.

For the past several years, she has had difficulty with even activities of daily living at home. She is no longer working. I thought she had reached Maximal Medical Improvement back in 2003. Physical examination reveals mild weakness in the upper and lower extremities. Reflexes are diminished throughout. She has had bilateral knee replacements.

In summary, Mrs. Barbara Burkhart is totally disabled. I do not see that she can return to work at any time. She opted not to have surgery at this time for her LS spine. I do not believe she is capable of her current profession as a compliance officer/auditor. Her current plan is to repeat MRI scan of the LS spine and continue Neurontin now, which has caused some cognitive slowing, but has helped neuropathic pain.



BU000249

PX 25

Re:    Barbara Burkhart
DOB: 02-02-1946
October 17, 2005
Page two

Her current diagnosis includes status post AC fusion with a questionable nonunion and lumbar disc herniation at L3-L4 with disc disease also at L4-L5 and L5-S1. We are repeating an MRI scan of the LS spine and to look for other options such as epidural blocks, therapy, or surgery as a last resort. She also presently has an attack of labyrinthitis/vertigo. She is being treated with Antivert for this and will see an ENT physician, Dr. Stronach, should the vertigo continue over the next week.

She is not released to return to work. Obviously, with her lumbar disc disease, she cannot stand, walk, or sit for prolonged periods of time. Lifting even over 5-10 pounds could not be done. Emotionally, I do not believe she can return to the work place, as well.

Thank you in advance for your cooperation in this matter and providing the appropriate disability for Mrs. Barbara Burkhart. If I can be of any further assistance, please do not hesitate to contact me. Best regards.

Sincerely,

Larry W. Epperson, M.D.

LWE/rl

cc:    Mrs. B. Burkhart
       4316 Lizteme Drive
       Montgomery, AL 36106


BU000250

# Neurology Consultants of Montgomery, P.C.

1722 Pine Street / Suite 700
Montgomery, Alabama 36106-1149
(334) 834-1300 • Fax (334) 834-8347

P. Castill Miller, M.D.
Diplomate American
Board of Psychiatry
& Neurology

Ben C. Wooten, M.D., Ph.D
Diplomate American
Board of Psychiatry
& Neurology

Sara S. Ghasby, M.D.
Diplomate American Board
of Internal Medicine

Larry W. Epperson, M.D.
Diplomate American
Board of Psychiatry
& Neurology

February 23, 2006

Disability Determination Service
P.O. Box 830300
Birmingham, AL 35283-0300

Re:    Barbara Burkhart
DOB:   02-02-1946

To Whom It May Concern:

I saw Mrs. Barbara Burkhart on 02-01-2006. I have a complete list of her symptoms and my impression and plan. She is totally disabled and cannot work. She has a history of cervical disc disease, lumbar disc disease, and status post AC fusion at C5-C6. She has cramping in her upper and lower extremities. She drops objects from her hands. She has GI upset, perhaps from medication. She also has some cognitive slowing, perhaps because of medication. Her medicines include Neurontin, folic acid, Synthroid, HCTZ, Zetia, Norvasc, Flexeril, Allace, Zyrtec, Prevacid, Aspirin, Mobic, and Toprol.

My impression is that she has a history of AC fusion at C5-C6 and spurring and disc protrusion below the fusion along with disc herniation at L4-L5 with bulging disc at L5-S1, probable peripheral neuropathy, intermittent vertigo, and bilateral knee replacements. Because of her cognitive slowing, cramping in the hands, neck pain, radicular arm pain paresthesas of the arms and legs, and cervical and lumbar disc disease, she cannot work.

Thank you in advance for your cooperation in this matter.

Sincerely,

Larry W. Epperson, M.D.

LWE/rl

cc:    Mrs. B. Burkhart

BU000283

(Page 6 of 10)

JUN.23. 2005 12:07PM   HANDEY WHITESELL                    No.0657   P. 1/1

# JACKSON FAMILY PRACTICE

*In Affiliation with Jackson Hospital*

George M. Handey, M.D.          Janise H. Whitesell, M.D.          Rachel M. McKinney, M.D.

June 23, 2005

To Whom It May Concern:

I am writing in regards to Barbara Burkhart, born February 2, 1946. Mrs. Burkhart has been a patient of mine since March 2003. She has a history of an anterior fusion of C5-6 and C6-7 in 1999 with a nonunion of C6-7. However, she has been gainfully employed and has had minimal difficulty with her neck until recently. Mrs. Burkhart saw me on May 26, 2005 with the complaint of dizziness, and spasms of her right hand worsened by looking down. Given her history, she was told not to return to work until we could further evaluate her. She then began to have severe headaches. All of these symptoms are exacerbated by work. Her symptoms are related to her history of cervical fusion and nonunion, but her disability should not be considered preexisting as her symptoms requiring her to quit working did not begin until May 2005. Mrs. Burkhart has applied for disability, and I fully support her decision. Please feel free to contact me with any further questions.

Sincerely,

Rachel M. McKinney, MD

1801 Pine Street • Suite 301 • Montgomery, AL • 36106 • (334) 265-5577



BU000246



009017

BU000370

PX-29

0929060001



# ARTICLE II
## *DEFINITIONS*

**Section 2.9.  Gender and Number.**  The masculine gender shall be deemed to include the feminine and the singular shall include the plural, unless otherwise clearly required by the context.

**Section 2.10.  Plan** shall mean the *Laboratory Corporation of America Holdings Short Term Disability Plan.*

**Section 2.11.  Plan Administrator** shall mean the person or persons responsible for the functions and management of the Plan.  The Plan Administrator shall be the Committee.

**Section 2.12.  Pre-existing Condition** shall mean an illness, injury or pregnancy for which the Claimant has seen a medical practitioner or taken medications during the 12-month period before your Plan coverage becomes effective or the 12-month period before your coverage becomes effective under the *Laboratory Corporation of America Holdings Long Term Disability Plan,* if later.

**Section 2.13.  Summary Plan Description** (SPD) shall mean the *Personal Choice Benefits Handbook* which describes the benefits which are available to Claimants.  The Summary Plan Description shall be incorporated by reference herein and shall be maintained with the Plan document.

**Section 2.14.  Total Disability** shall mean any injury, illness or pregnancy which causes the Claimant (1) to be unable to perform one or more of the material duties of your regular occupation, and the Company has no positions available that you are able to perform and (2) to be under the regular care and supervision of a licensed physician or other health care provider approved by the Committee for the Total Disability, unless the Committee in its sole discretion determines that the disabling condition is such that care and supervision is not necessary.

5

PX-29

# Long Term Disability Coverage

This Plan will pay a Monthly Benefit for a period of disability caused by a disease or injury. There is an elimination period. (This is the length of time during a period of disability that must pass before benefits start.)

## Test of Disability

From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be disabled on any day if:

- you are not able to perform the material duties of your own occupation solely because of: disease or injury; and
- your work earnings are 80% or less of your adjusted predisability earnings.

After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of:

- disease; or
- injury.

If your own occupation requires a professional or occupational license or occupational license or certification of any kind, you will not be deemed to be disabled solely because of the loss of that license or certification.

## Monthly Benefit

The Scheduled Monthly LTD Benefit, the Maximum Monthly Benefit, and the Minimum Monthly Benefit are shown on the Summary of Coverage.

The monthly benefit is an amount based on your monthly predisability earnings. Other income benefits, as defined later, are taken into account.

- If no other income benefits are payable for a given month:

  The monthly benefit payable under this Plan for that month will be the lesser of:

  the Scheduled Monthly LTD Benefit; and

  the Maximum Monthly Benefit.

- If other income benefits are payable for a given month:

  The monthly benefit payable under this Plan for that month will be the lesser of:

  the Scheduled Monthly LTD Benefit; and

  the Maximum Monthly Benefit;

  minus all other income benefits, but not less than the Minimum Monthly Benefit.

GR-9                                              4                                    12/13/2005

PX-30

## When Benefits Are Payable

Monthly benefits will be payable if a period of disability:

- starts while you are covered, and
- continues during and past the elimination period.

These benefits are payable after the elimination period ends for as long as the period of disability continues.

## A Period of Disability

A period of disability starts on the first day you are disabled as a direct result of a significant change in your physical or mental condition occurring while you are insured under this Plan. You must be under the regular care of a **physician**. (You will not be deemed to be under the **regular care of a physician** more than 31 days before the date he or she has seen and treated you in person for the disease or injury that caused the disability.)

Your period of disability ends on the first to occur of:

- The date Aetna finds you are no longer disabled or the date you fail to furnish proof that you are disabled.
- The date Aetna finds that you have withheld information which indicates you are performing, or are capable of performing, the duties of a **reasonable occupation**.
- The date you refuse to be examined by, or cooperate with, an independent **physician** or a licensed or certified health care practitioner, as requested.
- The day you cease to be under the regular care of a **physician**.
- The date an independent medical exam report or functional capacity evaluation fails to confirm your disability.
- The date you reach the end of your **Maximum Benefit Duration**.
- The date you are not undergoing **effective treatment for alcoholism or drug abuse**, if your disability is caused to any extent by alcoholism or drug abuse.
- The day after Aetna determines you are able to participate in an **Approved Rehabilitation Program** and you refuse to do so.
- The date of your death.
- The date you refuse to cooperate with or accept:

  changes made to a work site or job process to suit your identified medical limitations; or

  adaptive equipment or devices designed to suit your identified medical limitations;

  which would enable you to perform your **own occupation** or a **reasonable occupation** (if you are receiving benefits for being unable to work any **reasonable occupation**) and provided that a **physician** agrees that such changes or adaptive equipment suit your medical limitations.

- The date you refuse to receive treatment recommended by your attending **physician** that in Aetna's opinion would: cure; correct; or limit your disability.
- The date your condition would permit you to work, or increase the number of hours you work, or the number or type of duties you perform in your **own occupation**, but you refuse to do so.

~~A period of disability will end after 12 monthly benefits are payable if it is determined that the disability is primarily caused by:~~

- a Mental Health or Psychiatric condition, including physical manifestations of these conditions, but excluding those conditions with demonstrable, structural brain damage; or
- Alcohol and/or Drug Abuse, or
- any one of the following conditions:
  Chronic fatigue syndrome
  Thoracic outlet syndrome
  Fibromialgia
  Temporomandibular joint disorder (TMJ)

Environmental allergies
Multiple chemical sensitivities
Headaches (including, but not limited to functional, migraine, organic, sinus and tension)
Seizures (in absence of an additional diagnosis)
Sleep Apnea
Sick Building Disease
Cumulative trauma disorder, overuse syndrome or repetitive stress disorder including carpal tunnel syndrome and ulnar
   tunnel syndrome
Meniere's Disease
Latex allergies
Chronic Pain Syndrome
Myalgia
Neuralgia
Myofacial Pain Syndrome
Arthralgias
Myositis
Lyme Disease

The Separate Periods of Disability section does not apply beyond 12 months to periods of disability which are subject to the
above paragraph.

There are two exceptions which apply if you are confined as an inpatient in a hospital or treatment facility for treatment of
that condition at the end of such 12 months.

• If the inpatient confinement lasts less than 30 days, the period of disability will cease when you are no longer confined.
• If the inpatient confinement lasts 30 days or more, the period of disability may continue until 90 days after the date you
  have not been so continuously confined.

## How Separate Periods of Disability Are Treated

Once a period of disability has ended, any new period of disability will be treated separately.

However, 2 or more separate periods of disability due to the same or related causes will be deemed to be one period of
disability and only one elimination period will apply if:

the separation occurs during the elimination period and the periods are separated by less than 30 days in a row of work.

the separation occurs after the elimination period and the periods are separated by less than 6 months in a row of work.

The first period will not be included if it began while you were not covered under this LTD Plan.

If you become eligible for coverage under any other group long term disability benefits plan carried or sponsored by your
Employer, this Separate Periods of Disability section will cease to apply to you.

## Other Income Benefits

They are:

• 50% of any award provided under The Jones Act or The Maritime Doctrine of Maintenance, Wages and Cure.

• Disability, retirement, or unemployment benefits required or provided for under any law of a government. Examples are:

   Unemployment compensation benefits.

## ARTICLE II

### *DEFINITIONS*

The determination of whether or not an Claimant's illness or injury is a Total Disability shall be made by the Committee, based upon such evidence as the Committee in its sole discretion deems necessary or desirable. The Committee from time to time may review its initial determination and decide whether there is a continuation of the Total Disability, based upon such evidence as the Committee deems necessary or desirable. The Committee may require one or more physical examinations or other evaluations of the Claimant by physicians or other professionals selected and approved by the Committee to determine the commencement or continuation of a Total Disability.

If and so long as a Claimant claiming to have suffered a Total Disability fails to provide proper notice of such disabling injury or illness from their treating physician or other health care provider in the form requested by the Committee or refuses to submit to an examination or other evaluation by a physician or other professional as provided above, then the payment of the Claimant's disability benefits, if any, shall be denied or discontinued and may commence or resume only after submission of such notice or examination or evaluation and a determination as herein provided that the Claimant has suffered a Total Disability. The Committee in its sole discretion may award disability benefits retroactively.

6

# Centralized Appeal Unit Submittal Form

| Claimant: Barbara Burkhart | | SSN (Numbers Only): 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 |
|---|---|---|
| DOB: 02/02/1946 | PH: 334-271-6667 | Control: 885630 |
| Fiduciary: Aetna | Fiduciary Name/Address: PO Box 14553 Lexington KY 40512 | |
| Funding: ASC | Appeal Letter Date: 10/25/2005 | Appeal Rcd Date: 10/25/2005 |
| Workers Comp.: No | LT/ST/SC: ST | If ST, is there LTD Coverage? Yes |
| DA: Liann Wright | Phone: 813-775-0000 ex 23349 | Team ID & Initials: FA/LW |
| T/L: Quinones, Ony | Phone: 813-775-0210 | Team ID & Initials: AOQ |
| Test of Disability: Select One | | T/C date: N/A |
| DLW: 06-05/2005 | DCK: 06/06/2005 | EOB: 12-11-2005 |
| Last Day Cert: 09/30/2005 | | Date in Question: 10/01/2005 |
| Successive: No | | Successive dates: |
| Denial/Termination Date: 10/01/2005 | | |
| Denial/Termination Reason (Briefly Explain): per nurse review clinical do not support continued disability | | |
| Occupation: compliance auditor for Lab Corp | | |
| Job Description on file?: Yes | | |
| PDAW on file?: No | DCN# N/A | Rehab: Yes |
| Diagnosis: 952.9, 722.10, 784.0 | DCN# N/A | |
| Previous Clinical Reviewer: Susan Duffy RN | Clinical Reviewer: Susan | Clinical Review Date: 09/30/2005 |
| ERISA: Yes | | SSDI: No |



Contact Location: Shared Drive

Term Letter DCN: Term letter generated by

TUMS

Appeal Submittal Prepared by: Liann Wright

Date: 10/07/2005

***Please note: This form must be completed in its entirety.***

BU000280